No. 87-147

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

_____

IN RE THE MARRIAGE OF
JANATHAN LEA ALLEN, fka
JANATHAN L. WAGNER,

            Petitioner and Appellant,

      and

WILLIAM T. WAGNER,

            Petitioner and Respondent.

_____

APPEAL FROM:  District Court of the Fourth Judicial District,
              In and for the County of Missoula,
              The Honorable Douglas Harkin, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

            Thomas W. Trigg, Missoula, Montana

      For Respondent:

            Garlington, Lohn & Robinson; Larry E. Riley,
            Missoula, Montana

_____

                              Submitted on Briefs:  July 14, 1987

                                 Decided:  August 20, 1987

Filed:  AUG 20 1987

                    _Ethel M. Harrison_
_____
                  Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

Janathan Lea Allen, appellant-petitioner (wife) appeals the judgment of the District Court of the Fourth Judicial District, Missoula, County. We remand on the joint custody plan raised by issue number one and affirm all other issues.

The issues on appeal are:

(1) Did substantial evidence support the District Court's decision to require the eight-year-old son Joseph to move annually between his mother's home in San Diego and his father's home in Missoula?

(2) Did substantial evidence support the court's child support determination?

(3) Did substantial evidence support the court's refusal to award the wife short-term maintenance to obtain employment-related education?

(4) Did substantial evidence support the court's decision to require the wife to shoulder her attorney fees and expenses in this case?

Jan Allen (wife) and Bill Wagner (husband) were married on December 27, 1975, in Roundup, Montana. They have one child, Joseph, now eight years old. Husband is an attorney at law and during the marriage he worked at a law firm in Billings, was a partner in his own firm in Missoula, and is now an associate in a large law firm in Missoula, Montana. Wife has an accounting degree, obtained in 1975, from the University of Montana, however, she is not a CPA, and pursued her accounting career as a staff accountant for three years until the birth of Joseph. Upon the birth of Joseph, it was agreed between the parties that she would be principally the mother and homemaker of the family, and she would no longer pursue her professional career. This continued until their

2

separation on September 15, 1984. Subsequent to the separation, wife has worked as a real estate sales person but has earned no income. She has been a member of the City Council of the City of Missoula and received a salary of approximately $400 a month. The nine and one-half year marriage was dissolved on June 10, 1985 and the issues of physical custody, property division, child support and attorney fees were reserved. These issues were resolved by the District Court in a judgment of December 19, 1986. It is from this judgment, and the order denying the motion for reconsideration of the judgment, that this appeal lies.

The first issue concerns physical custody of Joseph. The court in its original judgment of June 10, 1985 granting the divorce, awarded the parents joint custody of the minor son Joseph and reserved the physical custody question, directing that Joseph reside with his mother, with visitations by the father. The court's final judgment of December 19, 1986, ratified the decision of June 10, 1985 as to joint custody, and directed that Joseph would reside with the wife until July 15, 1987, with the exception of some holiday visitations. The court also held that Joseph would spend a month after that date with the husband and that in the interim period the husband, the husband's present wife, and Joseph would be interviewed by Dr. Stratford, a psychiatrist who testified at the hearing concerning the wife and Joseph. The court directed that a hearing be held in 1987 to determine whether Joseph should spend the 1987-1988 school year with the husband. The court basically established an annually alternating living arrangement for Joseph between the wife's residence, which is now in San Diego, and the husband's residence in Missoula.

The court also ordered as follows:

3

A rebuttable presumption will exist as to the change in residency being in Joseph's best interest, which presumption can be overcome by competent evidence, including expert testimony by Dr. Stratford, who will be furnished Joseph's school and medical records from San Diego.

Two days before the final hearing on this matter, the wife informed the husband that she was moving to San Diego. However, the decision was made by the parties to hold the hearing relative to the custody of Joseph on the short notice of a change in residency. At the hearing the father then testified and recommended the arrangement of alternating school years with Joseph. The wife's and Dr. Strafford's testimony revealed that Joseph has a somewhat extreme asthmatic condition, which was being treated by medical personnel. In the past, due to the wife's being the homemaker, Joseph relied heavily on his mother to assist him in these asthmatic situations and be an early warning person. The husband during the time of the marriage and when the family lived together, was compelled to work long hours. The husband admitted his actual contact with his son was not as much as it should have been because of his hours. Joseph indicated to the court he wished to be with his mother. The wife opposed the idea of alternating the physical custody of the child. She did propose at the hearing, however, that physical custody be with her during the school year and with the husband during school vacations.

Dr. Stratford had evaluated the wife and Joseph and testified as to the results, which were generally favorable. It is noted that the court provided in its order for the same type of evaluations of the husband, his present wife and Joseph to be done in 1987, since there was not sufficient time for an evaluation before the hearings.

4

We cannot decide whether or not substantial evidence supports the court's order of annual alternating custody, for the court's order and judgment were premature. The court, at the time, did not have all of the contemplated evidence before it. The court should have the opportunity of having this evidence before it before deciding the issue and creating a rebuttable presumption in the future.

We are aware that § 40-4-224(2), MCA, provides in part "The allotment of time between parties shall be as equal as possible; however, each case shall be determined according to its own practicalities with the best interests of the child as the primary consideration." We have stated as recently as In Re the Marriage of Symka and Dayton (Mont, 1987), ____ P.2d ____, 44 St.Rep. 1188, that this statute requiring an equal time recommendation be balanced by the practicalities of providing for the best interests of the child. The child's best interest is the primary consideration.

The order of the District Court concerning physical custody of Joseph is set aside and this issue is remanded for the introduction of further relevant evidence and the rebuttable presumption will not exist.

As to the second issue, does substantial evidence support the court's child support determination, the court did not abuse its discretion. The appellant contends that the child support, using the Carson case guidelines would amount to $440 per month. These are only guidelines and the court did set child support at $400 per month. In view of the decrease in the lifestyle of both parties by reason of this divorce and their lack of financial acumen, this amount is not unreasonable.

The third issue concerns whether substantial evidence supports the court's refusal to award the wife short-term maintenance to obtain employment-related education. The wife

5

wished to have short-term maintenance to enable her to obtain an MBA, or attend some other type of graduate school, which would take one or more years. The court, in order to raise her employment opportunities said that if she wished to go to school the husband would pay educational costs as follows: $3,000 a year for tuition, books and fees between January 1, 1987 and December 31, 1991, subject to a maximum of three years while the wife attends graduate school, college, or other career related training program. The court found that considering the maintenance previously paid to her during the time of the divorce and custody proceedings, the fact that the husband was insolvent and the debt liability distribution as between the husband and the wife for the debts incurred during the marriage, the payment of educational maintenance as ordered was reasonable. Substantial evidence backs this decision and we will not disturb.

The last issue is whether substantial evidence supports the court's decision that each party shall pay their own attorney fees. Attorney fees are largely within the discretion of the lower court and considering all the facts there has been no abuse of discretion.

We affirm issues two, three and four and remand this case to the District Court for determination of a physical custody plan determined to be in the best interests of the child with no rebuttal presumption as provided in the court's previous judgment.

_____
Justice

We Concur:

_____
         Chief Justice

_____

_____

_____
         Justices